**Law Offices of Carlos R. Barrios & Assoc. a P.C.**
Carlos R. Barrios 249654
510 West 6th Street Suite 1210
Los Angeles, CA 90014
Tel.: (213) 599-8414
Fax.: (888) 255-9710

Attorneys for Petitioner,
DEIRY BERENICE RUIZ SANDOVAL

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEIRY BERENICE RUIZ SANDOVAL,<br><br>Petitioner,<br><br>VS.<br><br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement; THOMAS GILES in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; FERETI SEMAIA, Warden of the Adelanto ICE Processing Center, in his/her capacity as Warden of the Adelanto ICE Processing Center, and DOES 1 to 10, INCLUSIVE.<br><br>Respondents. | Case No.<br><br>Related Case. 5:26-cv-03859-AYP<br>Agency No.: A219 708 610<br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE** |

Petitioner DEIRY BERENICE RUIZ SANDOVAL ("Petitioner"), through undersigned counsel, petitions this Court for a renewed writ of habeas corpus under 28 U.S.C. § 2241 and alleges as follows:

## I.

## INTRODUCTION

1. COMES NOW Petitioner Deiry Berenice Ruiz Sandoval ("Petitioner" or "Ms. Ruiz Sandoval"), by and through counsel, and petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and appropriate declaratory and injunctive relief challenging her continuing detention by United States Immigration and Customs Enforcement ("ICE") in violation of the Due Process Clause of the Fifth Amendment and applicable federal immigration law.
2. This is not an ordinary case in which a detained noncitizen received an adverse discretionary bond determination and now asks an Article III court to substitute its judgment for that of an Immigration Judge. Petitioner has already obtained federal habeas relief. On September 25, 2026, this District granted her first petition and ordered Respondents either to release her or provide an individualized bond hearing under 8 U.S.C. § 1226(a). *Ruiz Sandoval v. Mullin*, No. 5:26-cv-03859-AYP, Dkt. 12 (C.D. Cal. Sept. 25, 2026).

3. The Government subsequently provided a custody hearing, but the Immigration Judge denied release on the ground that Petitioner presents a flight risk. She therefore remains confined at the Adelanto ICE Processing Center, notwithstanding the prior grant of habeas relief. Her continued detention raises a constitutional issue distinct from the one expressly resolved by the first judgment: whether ICE could lawfully extinguish an established period of government-authorized community liberty, supported by an active grant of Deferred Action for Childhood Arrivals ("DACA"), without first providing constitutionally sufficient notice and an opportunity to contest detention.

4. That issue has acquired particular significance because, on October 8, 2026, Magistrate Judge Sheri Pym issued a closely analogous decision involving another DACA recipient detained at Adelanto. *De La Rosa Gallegos v. Acting or Current Warden*, No. 5:26-cv-02376-SP, Dkt. 19 (C.D. Cal. Oct. 8, 2026).

5. In *De La Rosa Gallegos*, the court concluded that the Government's prior grant of DACA, considered together with the petitioner's established family, employment, and community life, supported a constitutionally protected liberty interest in remaining free from immigration detention. Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court held that detaining the

petitioner without sufficient advance procedures violated the Fifth Amendment. It rejected the proposition that a belated bond hearing necessarily cured that deprivation and ordered immediate release. The court further required constitutionally adequate procedures before future re-detention, including a neutral hearing at which the Government must establish the necessity of detention by clear and convincing evidence.

6. Petitioner acknowledges that *De La Rosa Gallegos* is a persuasive district-court decision, not controlling Ninth Circuit precedent. Its importance lies in the close relationship between its legal reasoning and the constitutional question presented here.

7. Ms. Ruiz Sandoval was born in Mexico in 2002 and entered the United States as a young child, approximately four years old. She has spent virtually her entire remembered life in this country. She pursued her education in California, obtained an associate degree from Long Beach City College in 2022, established employment and community relationships, and received affirmative deferred-action protection from the Federal Government.

8. Her most recent DACA approval authorizes deferred action from June 25, 2025, through June 24, 2027, unless terminated in accordance with applicable law. That approval remained within its stated validity period when ICE detained her on June 8, 2026. The presently available documents

do not establish that DHS formally terminated the grant before her apprehension.

9. The distinction between the scheduled expiration of DACA and its actual termination is consequential. Petitioner does not contend that DACA confers lawful immigration status or irrevocable immunity from detention. Rather, the Government's affirmative exercise of prosecutorial discretion is relevant to whether she possessed a protected liberty interest in the continuation of the community liberty that the Government had authorized and upon which she organized her life.

10. Petitioner also previously received authorization to travel through advance parole and returned to the United States on February 13, 2024. That fact further demonstrates that she was not merely unknown to immigration officials or present through an unexplained period of governmental inaction. She affirmatively participated in immigration procedures and obtained discretionary authorization from the Government.

11. On June 8, 2026, ICE took Petitioner into custody following her release from Burbank City Jail. According to the Government's representations in the first habeas action, ICE conducted a targeted enforcement operation upon that release. Petitioner disputes that the circumstances provided

constitutionally sufficient justification for immediate immigration confinement without advance procedural protections.

12. The Government's asserted criminal-history evidence must be described accurately. Petitioner's earlier misdemeanor battery matter under California Penal Code § 242 was addressed through court-initiated diversion under Penal Code §§ 1001.95–1001.97. The record also contains the Government's allegation that Petitioner was arrested on June 2, 2026, for felony assault on a custodial officer under Penal Code § 241.1. The September 25 federal order described that latter matter as pending; it did not establish a conviction.

13. Petitioner does not contend that alleged new criminal conduct is irrelevant to immigration custody. A substantiated arrest, charge, or reliable evidence of underlying conduct may materially affect an individualized danger or flight-risk assessment. But the existence of such evidence does not itself determine whether procedural safeguards could constitutionally be dispensed with before ICE deprived a DACA recipient of her previously established community liberty.

14. That is precisely the distinction recognized in *De La Rosa Gallegos*. There, the court considered the petitioner's DUI conviction and pending domestic-violence allegation but concluded that those circumstances should have been

evaluated through the constitutionally required process, rather than assumed to excuse that process altogether.

15. The earlier habeas petition filed on behalf of Ms. Ruiz Sandoval challenged Respondents' treatment of her as subject to mandatory detention under § 1225(b)(2)(A) and their refusal to provide ordinary bond review. Judge Anna Y. Park resolved that controversy after Respondents acknowledged Petitioner's membership in the bond-eligible class recognized in *Maldonado Bautista v. Santacruz*.

16. The September 25 order required release or a § 1226(a) hearing within seven days. Respondents' provision of a subsequent hearing may constitute compliance with the express alternative remedy authorized by that judgment. Petitioner does not seek to characterize such compliance as contempt or a violation of the September 25 order.

17. Nor does Petitioner contend that a subsequent adverse bond decision is necessarily unconstitutional merely because she disagrees with the Immigration Judge's assessment of flight risk. The Ninth Circuit has repeatedly distinguished reviewable legal and constitutional defects from ordinary discretionary custody determinations. See *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024).

18. Instead, the present action advances a constitutional theory that the first judgment did not expressly decide: the Government had already granted Petitioner deferred action, permitted her to remain in the community, and authorized significant aspects of her life in the United States. Before abruptly replacing that arrangement with secure civil detention, due process arguably required a meaningful opportunity to contest the necessity of incarceration, subject to any adequately established exigency.

19. An ordinary bond hearing conducted after physical liberty has already been withdrawn may determine whether release is appropriate going forward. It does not necessarily restore the constitutional position Petitioner would have occupied had the required procedure been provided before detention occurred.

20. Petitioner therefore seeks immediate release as the principal remedy for an antecedent deprivation of protected liberty without constitutionally sufficient procedures, together with prospective protections against renewed detention under the same circumstances.

21. Alternatively, if the Court determines that another custody proceeding is necessary, Petitioner requests an expedited hearing before a neutral adjudicator under express procedural safeguards, including consideration of the continuing effect of her DACA grant, the actual disposition of her

criminal matters, individualized danger and flight-risk evidence, and reasonable alternatives to physical confinement.

22. The writ of habeas corpus exists to secure effective judicial relief from unlawful executive detention. Because Petitioner remains incarcerated after obtaining initial federal habeas relief, and because subsequent persuasive authority has directly addressed the distinct pre-deprivation liberty interest implicated by active DACA, she respectfully requests emergency adjudication of this renewed Petition.

## II.

## JURISDICTION AND VENUE

23. This Court possesses jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241(a) and (c)(3). Section 2241(c)(3) authorizes habeas relief when an individual remains in custody in violation of the Constitution or laws of the United States.

24. Petitioner is presently confined in federal civil immigration detention and challenges the constitutional sufficiency of the procedures through which that detention was imposed and continues to be maintained. These claims fall within the traditional scope of habeas corpus. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

25. Federal habeas jurisdiction extends to constitutional challenges concerning immigration detention notwithstanding the Government's broad statutory authority over immigration enforcement. *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (*en banc*).

26. Petitioner does not request that this Court determine her removability, adjudicate an application for immigration relief, or exercise discretionary immigration bond jurisdiction in the first instance. The present claim concerns the Government's authority to maintain physical detention notwithstanding its earlier affirmative exercise of deferred-action discretion and the procedural protections required before deprivation of an established liberty interest.

27. Section 1226(e) does not eliminate jurisdiction over those legal and constitutional questions. Although it restricts federal reconsideration of the agency's discretionary custody determinations, it does not categorically bar review of constitutional claims or errors concerning the legal standards governing detention. *Martinez v. Clark*, 124 F.4th 775, 781–85 (9th Cir. 2024).

28. Petitioner does not ask the Court merely to assign greater weight to her education, employment, community ties, or release plan than the Immigration Judge did. Her principal claim challenges the adequacy and

timing of procedures required before the Government took away her previously established liberty.

29. The statutory framework is likewise relevant. The September 25 judgment recognized Petitioner's entitlement to an individualized hearing under § 1226(a), consistent with the bond-eligibility framework applicable to her detention. The current Petition does not seek to re-litigate that threshold classification except to the extent Respondents assert a materially different detention authority.

30. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides a mechanism for declaratory relief where an independent basis for federal jurisdiction exists. Petitioner also seeks appropriate prospective injunctive relief ancillary to the adjudication of her federal constitutional claims.

31. Venue is proper in the Central District of California because Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, within the Eastern Division of this District. Her immediate physical custodian is located within the Court's territorial jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 443 (2004).

32. The prior federal action, *Ruiz Sandoval v. Mullin*, No. 5:26-cv-03859-AYP, is expressly disclosed. Petitioner requests related-case consideration as appropriate under the governing local rules, without assuming that the

subsequent action must automatically be assigned to the same judicial officer.

## III.

## PARTIES

33. Petitioner is a native and citizen of Mexico, born in 2002. She entered the United States as a young child, received DACA, and established extensive educational, employment, family, and community ties in California. She is presently confined at the Adelanto ICE Processing Center.

34. Respondent MARKWAYNE MULLIN is the Secretary of the United States Department of Homeland Security ("DHS"). In that capacity, Respondent Mullin exercises responsibility for the administration and enforcement of the immigration laws and supervises DHS components, including U.S. Immigration and Customs Enforcement ("ICE"). See 8 U.S.C. § 1103(a). Respondent Mullin is named in his official capacity in connection with the challenged detention practices and the declaratory and prospective relief sought in this action.

35. Respondent TODD BLANCHE is the Attorney General of the United States. In that capacity, Respondent Blanche exercises statutory authority over the Executive Office for Immigration Review, including the immigration courts and the Board of Immigration Appeals, and the administration of

immigration adjudication and custody-review procedures within their jurisdiction. See 8 U.S.C. § 1103(g). Respondent Blanche is named in his official capacity with respect to the challenged legal framework and the alternative relief requesting a constitutionally adequate custody hearing. Petitioner does not allege that the Attorney General is his immediate physical custodian.

36. Respondent DAVID J. VENTURELLA is the Acting Director of ICE. In that capacity, Respondent Venturella exercises supervisory authority over ICE's immigration-enforcement and detention operations, including the implementation of policies and procedures governing civil immigration arrests, custody determinations, and release. Respondent Venturella is named in his official capacity in connection with ICE's continued detention of Petitioner and the prospective relief requested herein.

37. Respondent THOMAS GILES is the Acting Field Office Director for Los Angeles, ICE. On information and belief, Respondent Giles exercises supervisory authority over the ICE personnel responsible for Petitioner's immigration custody and the agency's continued detention of Petitioner at the Adelanto ICE Processing Center. Respondent Giles is named in his official capacity as the local ICE official responsible for implementing

applicable custody requirements and effectuating any relief ordered by this Court within his authority.

38. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Center, where Petitioner is physically confined. Respondent Semaia exercises immediate physical custody over Petitioner and is named in the official capacity of Warden. As Petitioner's immediate custodian within this District, Respondent Semaia is responsible for producing Petitioner as directed and implementing any order requiring his release. See 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

39. Respondents DOES 1 through 10, inclusive**,** are officials or custodial personnel whose identities and precise responsibilities are presently unknown to Petitioner and who, on information and belief, exercise authority over the custody or implementation of the detention practices challenged in this petition. These Respondents are named solely in their official or custodial capacities, to the extent their authority makes them proper parties to the requested habeas or prospective relief. Petitioner will seek leave to substitute their true names and specify their respective roles when that information becomes available.

40. Petitioner seeks habeas, declaratory, and prospective relief directed to Respondents’ respective custodial and official responsibilities. He does not seek monetary damages or assert individual-capacity claims in this action.

41. All Respondents are sued solely in their official capacities.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. *Prudential Exhaustion Must Be Evaluated According To The Particular Constitutional Claim Presented*

42. Petitioner acknowledges that a noncitizen ordinarily must pursue administrative review before asking a federal district court to reconsider an adverse discretionary bond determination. Leonardo v. Crawford, 646 F.3d 1157, 1160–61 (9th Cir. 2011).

43. That principle is important because the Immigration Judge denied bond following the September 25 federal judgment. To the extent Petitioner separately challenges reviewable legal or procedural errors committed during that hearing, the availability and status of a BIA bond appeal are material.

44. However, the primary claim presented here is distinct. Petitioner asserts that the Government violated procedural due process when it initially detained an individual whose active DACA grant and established community liberty

entitled her to pre-deprivation procedural safeguards. That injury preceded the subsequent Immigration Judge hearing.

45. The administrative bond appeal process may evaluate whether the Immigration Judge properly assessed danger and flight risk. It does not necessarily offer an effective remedy for a separate claim that the Government was constitutionally required to provide procedures before the original deprivation.

46. Exhaustion under § 2241 is generally prudential rather than jurisdictional. *Laing v. Ashcroft*, 370 F.3d 994, 997–1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815–16 (9th Cir. 2007).

47. The Court should therefore distinguish Petitioner's antecedent constitutional claim from any ordinary challenge to the Immigration Judge's later discretionary custody assessment.

B. *The First Puga Factor Supports Excusal Because The Central Pre-Deprivation Question Is Constitutional*

48. The first *Puga* consideration examines whether agency expertise is necessary to develop the factual record and reach an appropriate determination.

49. The facts relevant to the principal claim are substantially documentary: Petitioner's DACA approval; the stated validity period; any administrative

termination records; the circumstances of her June 8 apprehension; the September 25 judgment; and the later bond-hearing record.

50. Whether those circumstances established a liberty interest requiring pre-deprivation procedures is a constitutional question governed by *Mathews*, *Morrissey*, *Young*, and the federal decisions addressing deferred action and immigration detention.

51. Although the Board possesses expertise in immigration custody administration, it does not have authority to conclusively determine the constitutionality of the federal detention regime or award the full prospective judicial relief requested here.

52. The agency's expertise therefore does not require that every aspect of this constitutional challenge first be resolved through an ordinary bond appeal.

C. *Excusal Would Not Encourage Deliberate Circumvention Of The Administrative Scheme*

53. Petitioner has already pursued federal and administrative procedures concerning her detention. She filed the prior § 2241 action, obtained an order requiring individualized custody review, and thereafter participated in the bond process that resulted from that judgment.

54. She does not seek to bypass the Immigration Judge merely because the result was unfavorable.

55. Rather, she challenges an antecedent procedural violation that the first judgment did not expressly resolve and that the subsequent custody hearing did not necessarily remedy.

56. Recognizing that distinction would not authorize unrestricted federal reweighing of adverse immigration custody decisions. It would preserve review of a discrete Fifth Amendment claim arising from the Government's own prior affirmative deferred-action determination.

D. *The Third Puga Factor And Laing Exceptions Support Excusal Where The Administrative Process Cannot Restore The Pre-Deprivation Opportunity*

57. The third *Puga* factor considers whether administrative review is likely to permit correction of the challenged error and eliminate the need for judicial intervention.

58. A favorable Board decision might secure Petitioner's release and thereby substantially narrow the practical need for habeas relief. Petitioner acknowledges that possibility.

59. But administrative reconsideration after months of detention does not necessarily restore the opportunity to contest detention before it occurred.

60. Nor can the Board necessarily award prospective relief requiring constitutionally adequate procedures before future re-detention or determine that an antecedent violation warrants restoration of the status quo.

61. In *De La Rosa Gallegos*, the court excused prudential exhaustion after finding that the claim concerned pre-deprivation procedures and that subsequent bond review would not provide an adequate remedy for the particular constitutional injury.

62. Petitioner submits that the same reasoning applies here, subject to the factual differences between the records.

63. Under *Laing*, excusal is appropriate where available administrative remedies are inadequate or inefficacious, pursuit would be futile, irreparable injury would result, or proceedings themselves are void. 370 F.3d at 1000–01.

64. Petitioner's ongoing confinement and the asserted inability of an ordinary bond appeal to remedy the original deprivation support excusal as to her independent pre-deprivation due-process claim.

65. If the Court determines that administrative review must be completed before considering a separate challenge to the IJ's bond decision, Petitioner alternatively requests that the Court retain jurisdiction and stay that discrete claim rather than dismiss the entire action.

## V.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *Petitioner Established Her Life In The United States After Arriving As A Young Child*

66. Petitioner was born in Mexico in 2002 and entered the United States at approximately four years of age.

67. She grew up in California, pursued her education, and obtained an associate degree from Long Beach City College in 2022.

68. Her educational achievements and employment history reflect substantial integration into the community in which she has lived since childhood.

69. Petitioner's family relationships, education, employment, and community connections are relevant to her protected liberty interest and to the individualized assessment of any actual risk of nonappearance.

B. *DHS Affirmatively Granted DACA Extending Through June 24, 2027*

70. Petitioner obtained Deferred Action for Childhood Arrivals protection and received an approval notice establishing a deferred-action period from June 25, 2025, through June 24, 2027, unless terminated.

71. The grant reflected an affirmative exercise of prosecutorial discretion by the Federal Government, rather than a mere absence of enforcement activity.

72. Petitioner also received advance-parole authorization and returned to the United States on February 13, 2024.

73. Petitioner does not contend that DACA confers lawful permanent residence, immigration status, or an irrevocable promise against enforcement.

74. Rather, the grant is constitutionally relevant because the Government expressly authorized a period of deferred action during which Petitioner continued to live, work, and establish her affairs in the United States.

75. The available record does not establish that USCIS formally terminated Petitioner's DACA before June 8, 2026.

76. Whether the grant was formally terminated before or after detention, and whether applicable termination procedures were followed, are factual matters requiring confirmation from DHS's records.

C. *The Criminal Proceedings Require Accurate And Separate Treatment*

77. In 2025, Petitioner faced a misdemeanor battery matter under California Penal Code § 242.

78. The criminal-court materials submitted in the first habeas action identify court-initiated diversion under Penal Code §§ 1001.95–1001.97.

79. Petitioner previously represented that she completed the diversion conditions and that the matter was dismissed. The September 25 federal judgment recorded that representation without independently adjudicating the final criminal disposition.

80. Accordingly, Petitioner requests that the Court consider the certified criminal docket and any final order establishing the disposition of that matter.

81. The Government additionally alleged that Petitioner was arrested on June 2, 2026, for felony assault on a custodial officer under California Penal Code § 241.1 and that the charge remained pending.

82. Petitioner does not characterize that allegation as a conviction or ask the Court to disregard it. The disposition, facts, and reliability of any supporting evidence are material to a properly individualized custody inquiry.

83. Neither matter automatically establishes that the Government could dispense with otherwise required constitutional procedures. The significance of criminal allegations for danger, flight, and the urgency of detention must be considered under the applicable legal standards.

### D. *ICE Detained Petitioner On June 8, 2026, While Her DACA Approval Remained Within Its Stated Validity Period*

84. On June 8, 2026, Petitioner was taken into ICE custody upon her release from Burbank City Jail, according to Respondents' representations in the prior habeas action.

85. At the time, the stated validity period of her DACA grant extended for more than another year.

86. The presently available materials do not establish that Petitioner received advance notice of a DHS decision to terminate her DACA or to withdraw the community liberty previously authorized through deferred action.

87. Nor do they establish that, before ICE took her into custody, a neutral decision-maker conducted an individualized hearing assessing whether immediate immigration detention was necessary based upon danger or flight risk.

88. Petitioner alleges that the deprivation occurred without such advance process.

89. The Government's asserted law-enforcement interests and Petitioner's recent criminal allegations may bear upon whether exigent circumstances made advance process impracticable. The current record does not conclusively resolve that issue.

E. *The first federal habeas action resulted in a release-or-hearing order*

90. On July 12, 2026, Petitioner filed a habeas petition in *Ruiz Sandoval v. Mullin*, No. 5:26-cv-03859-AYP.

91. The principal statutory dispute concerned Respondents' refusal to recognize ordinary bond eligibility under § 1226(a).

92. Respondents conceded that Petitioner was a member of the bond-eligible class recognized in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM.

93. On September 25, 2026, Judge Anna Y. Park granted the petition and issued a writ requiring Respondents either to release Petitioner immediately or provide an individualized § 1226(a) hearing within seven days.

94. The order also required a joint status report confirming compliance and provided for advance notice concerning removal from the Court's jurisdiction.

95. The decision did not expressly determine whether active DACA independently entitled Petitioner to a pre-deprivation hearing before June 8 detention.

96. The Government thereafter provided a bond hearing, and the Immigration Judge denied release based upon flight risk.

97. The actual hearing date, written decision, burden applied, supporting evidence, and oral findings must be established from the subsequently generated EOIR record.

F. *De La Rosa Gallegos subsequently clarified the constitutional significance of DACA-derived liberty*

98. On October 8, 2026, Judge Sheri Pym granted habeas relief to a DACA recipient in *De La Rosa Gallegos v. Acting or Current Warden*, No. 5:26-cv-02376-SP, Dkt. 19.

99. The court concluded that the petitioner's prior DACA grant, together with established personal and community circumstances, supported a constitutionally protected liberty interest in remaining free from detention.

100. Applying the balancing framework of *Mathews v. Eldridge*, the court found that the Government violated procedural due process by imposing detention without the constitutionally required pre-deprivation process.

101. The court further rejected the proposition that a belated bond hearing necessarily cured the original constitutional injury.

102. The remedy was immediate release, accompanied by prospective protections against re-detention without a sufficient showing before a neutral decision-maker.

103. 102. That decision did not concern Ms. Ruiz Sandoval and does not bind this Court. It does, however, supply closely analogous reasoning concerning the independent constitutional significance of a prior DACA grant.

## VI.

## LEGAL BACKGROUND

A. *The Fifth Amendment Protects Established Liberty Against Deprivation Without Constitutionally Adequate Procedures*

104. The Fifth Amendment protects persons within the United States against deprivation of liberty without due process of law. That protection extends to noncitizens regardless of whether they possess lawful permanent residence or other formal immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 690, 693 (2001).

105. Freedom from physical confinement lies at the core of the protected liberty interest. *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

106. The constitutional inquiry has two components: whether the challenged governmental action interfered with a protected liberty interest and, if so, whether the procedures accompanying the deprivation were constitutionally sufficient. *Kentucky Department of Corrections v. Thompso*n, 490 U.S. 454, 460 (1989).

107. Governmental decisions may create protected liberty interests even when the underlying governmental benefit remains conditional. *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972); *Young v. Harper*, 520 U.S. 143, 147–49 (1997).

108. In *Morrissey*, the Supreme Court recognized that conditional liberty, although subject to restrictions and possible revocation, remains materially different from physical imprisonment. The conditional character of release does not eliminate the procedural protections required before that liberty is withdrawn.

109. *Young* likewise recognized that an arrangement allowing an individual to live and function in the community may generate a protected liberty interest despite the Government's continuing supervisory authority.

110. These authorities do not establish that every discretionary immigration benefit is equivalent to criminal parole. They demonstrate the broader constitutional principle that the Government's authority to terminate a conditional arrangement does not necessarily permit it to do so without fair procedures.

111. The significance of that principle in immigration detention is evaluated through the particular statutory framework, the nature of the Government's prior authorization, and the procedures provided before liberty was withdrawn.

B. *DACA Is Discretionary And Does Not Confer Lawful Immigration Status, But Its Affirmative Grant May Materially Affect The Protected-Liberty Analysis*

112. DACA is a form of deferred action implemented through the exercise of prosecutorial discretion. It does not confer lawful permanent residence, an immigration status, or an unconditional right to remain in the United States.

113. The regulations expressly preserve the Government's authority to undertake appropriate enforcement action notwithstanding a DACA grant. See 8 C.F.R. § 236.21(c).

114. Nevertheless, a DACA grant represents an affirmative governmental decision to defer removal for a stated period, subject to the terms and limitations of the program.

115. The relevant regulation permits discretionary termination of a DACA grant but ordinarily requires USCIS to provide notice of intent to terminate and an opportunity to respond before termination. 8 C.F.R. § 236.23(d)(1).

116. The regulation recognizes exceptions permitting termination without advance notice and response in specified national-security or egregious-public-safety circumstances. Even when those exceptions apply, notice of termination remains required.

117. Petitioner therefore does not claim that the Government was legally incapable of modifying its prior exercise of prosecutorial discretion. She

contends that the Government's affirmative grant of deferred action, and the procedures governing its potential termination, are materially relevant to the determination of whether a protected liberty interest existed and whether the deprivation was constitutionally adequate.

118. The existence or nonexistence of formal termination also matters because detention and DACA termination are legally distinct acts. ICE custody does not, standing alone, prove that USCIS formally terminated deferred action.

119. Petitioner requests that the Court distinguish those actions and require Respondents to identify any actual termination decision, its date, the official or agency responsible, the regulatory ground invoked, and the procedures followed.

120. If no formal termination occurred, the Court must evaluate what constitutional significance attaches to detention imposed while the affirmative deferred-action grant remained operative.

121. If termination did occur, the Court must examine whether the procedures prescribed by § 236.23(d) were followed or whether a legally applicable exception justified different procedures.

C. *Procedural Adequacy Is Governed By Mathews V. Eldridge*

122. In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court established the familiar three-part framework governing the sufficiency of procedural safeguards.

123. The inquiry examines the private interest affected, the risk of erroneous deprivation through the procedures employed and the probable value of additional safeguards, and the Government's interests, including the practical burden associated with additional process.

124. The timing of the required process is particularly significant where the Government can identify the affected individual in advance and the deprivation involves physical confinement.

125. The Supreme Court has recognized that procedural due process ordinarily requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

126. Although urgent circumstances may justify immediate governmental action followed by prompt review, the mere existence of post-deprivation procedures does not automatically establish that advance process was unnecessary in every case. See *Zinermon v. Burch*, 494 U.S. 113, 127–32 (1990).

127. Whether pre-deprivation process was constitutionally required therefore depends upon the circumstances surrounding the Government's decision, including the protected interest, the availability of advance procedures, the need for immediate action, and the likely utility of individualized review.

D. *De La Rosa Gallegos Applies Those Principles To A DACA Recipient Detained After Establishing Community Liberty*

128. In *De La Rosa Gallegos v. Acting or Current Warden*, No. 5:26-cv-02376-SP, Dkt. 19, slip op. at 8–15 (C.D. Cal. Oct. 8, 2026), the court applied Mathews to an individual who had received DACA and lived in the United States since early childhood.

129. The court concluded that the petitioner's affirmative deferred-action history, longstanding community life, employment, and family relationships established a constitutionally protected liberty interest.

130. The court then held that the Government violated procedural due process by detaining him without constitutionally sufficient prior process.

131. Importantly, the court recognized the existence of adverse criminal-history evidence, including a DUI conviction and a pending domestic-violence allegation. It concluded that the Government's concerns should have been addressed through the appropriate procedural safeguards rather than used to dispense with those safeguards categorically.

132. The court further held that a later bond hearing would not adequately remedy the particular antecedent deprivation and therefore ordered immediate release.

133. Finally, the court required a neutral pre-deprivation hearing before future re-detention, with the Government bearing a clear-and-convincing burden concerning danger or flight risk.

134. The decision does not constitute binding Ninth Circuit law and must be considered in light of the substantial factual and procedural differences among detention cases.

135. It nevertheless provides persuasive authority directly addressing a DACA-derived protected-liberty theory and the availability of immediate habeas release for a deprivation occurring before constitutionally sufficient procedures were afforded.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**

DEPRIVATION OF A PROTECTED LIBERTY INTEREST WITHOUT CONSTITUTIONALLY SUFFICIENT PRE-DEPRIVATION PROCESS, IN VIOLATION OF THE FIFTH AMENDMENT

136. Petitioner re-alleges and incorporates the preceding paragraphs.

137. The Fifth Amendment protects Petitioner against deprivation of physical liberty without constitutionally adequate procedures.

138. Petitioner possessed substantial personal and community liberty before June 8, 2026, having resided in the United States since childhood, pursued higher education, maintained employment and community relationships, and received affirmative deferred-action protection.

139. Her most recent DACA approval remained within its stated validity period when ICE detained her.

140. The Government therefore had previously made an individualized exercise of prosecutorial discretion permitting Petitioner to remain in the community under a conditional federal program.

141. Petitioner acknowledges that this arrangement did not create lawful immigration status or an unconditional right against future detention.

142. Nevertheless, under *Morrissey*, *Young*, and the persuasive reasoning of *De La Rosa Gallegos*, the affirmative grant, considered with Petitioner's established life in the community, supports a protected liberty interest requiring constitutionally sufficient procedures before its deprivation.

143. ICE detained Petitioner on June 8, 2026, without any pre-deprivation hearing established by the present record.

144. The Government has not established that a neutral decision-maker first determined whether detention was necessary to address a sufficiently substantiated danger or flight risk that could not be mitigated by reasonable conditions.

145. Applying the first *Mathews* factor, Petitioner's private interest in avoiding imprisonment was exceptionally substantial. Her long residence, education, community integration, and existing DACA grant magnified the consequences of replacing community liberty with secure detention.

146. Under the second factor, the risk of erroneous deprivation was substantial because the Government allegedly acted without a prior neutral assessment of whether immediate incarceration was necessary.

147. An advance hearing could have examined Petitioner's DACA status, the circumstances and dispositions of her criminal matters, her actual appearance history, community connections, proposed residence, and appropriate conditions of supervision.

148. The Government's recent criminal allegations are relevant, but their existence does not establish that an individualized hearing would have been useless. Nor does an arrest establish the same proposition as a conviction or a finding of dangerousness.

149. Under the third *Mathews* factor, Respondents have legitimate interests in enforcement, public safety, and securing appearance at immigration proceedings.

150. Those interests must nevertheless be distinguished from an interest in dispensing with procedural protections altogether.

151. The Government may be able to establish that an immediate risk or genuine exigency required custody before a neutral hearing could be arranged. But that justification must be assessed from the actual record rather than presumed from an arrest allegation alone.

152. Here, the presently available materials do not establish that Respondents provided advance process or demonstrate why such process was constitutionally impracticable.

153. Petitioner therefore alleges that her June 8 detention deprived her of established liberty without constitutionally sufficient procedures, in violation of the Fifth Amendment.

154. Under *De La Rosa Gallegos*, the appropriate remedy for such an established antecedent injury may be immediate release and prospective protection against repetition of the unlawful deprivation.

//

//

**COUNT TWO**

**THE SUBSEQUENT BOND HEARING DID NOT NECESSARILY REMEDY THE ANTECEDENT DUE-PROCESS VIOLATION**

155. Petitioner realleges and incorporates the preceding paragraphs.

156. Petitioner acknowledges that Judge Park's September 25 judgment authorized Respondents either to release her or to provide a § 1226(a) bond hearing within seven days.

157. Respondents thereafter provided a bond hearing, and the Immigration Judge denied release on flight-risk grounds.

158. Petitioner does not allege that the occurrence of that hearing, by itself, violated Judge Park's order. Nor does she suggest that Judge Park previously ordered unconditional immediate release.

159. The claim instead concerns whether the later custody hearing supplied a constitutionally adequate remedy for the deprivation of liberty that occurred on June 8.

160. *Mathews* recognizes the importance of the timing of procedural safeguards. Where a hearing must precede deprivation to provide meaningful protection, a later hearing does not necessarily restore the opportunity that was lost.

161. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), similarly recognized that a hearing offered only after an adverse governmental decision has taken effect may impose substantially different burdens upon the affected individual.

162. Here, Petitioner was required to contest continued detention after being physically confined, separated from her community, and placed in a materially more difficult position to gather evidence and prepare a release plan.

163. The subsequent hearing could determine whether she should be released prospectively. It did not necessarily answer whether the original seizure of her community liberty complied with the Fifth Amendment.

164. In *De La Rosa Gallegos*, the court held that a later bond hearing would not remedy the specific pre-deprivation violation it found and ordered release as the appropriate habeas remedy.

165. That reasoning is particularly relevant because Petitioner's own deprivation occurred during the stated validity period of an affirmative DACA grant.

166. Petitioner therefore submits that the post-detention flight-risk denial does not, merely by its occurrence, extinguish the separate constitutional

claim arising from the timing and adequacy of the Government's original procedures.

167. The Court should examine the actual hearing record to determine whether the later adjudication supplied an independent and constitutionally sufficient basis for continued custody or whether the antecedent injury remains unremedied.

168. To the extent the Court concludes that continued detention rests upon an unremedied pre-deprivation constitutional violation, Petitioner requests immediate release rather than another ordinary bond hearing.

## COUNT THREE

FAILURE TO COMPLY WITH APPLICABLE DACA TERMINATION PROCEDURES, TO THE EXTENT DHS TERMINATED PETITIONER'S GRANT WITHOUT REQUIRED PROCESS

169. Petitioner re-alleges and incorporates the preceding paragraphs.

170. USCIS granted Petitioner DACA for the period June 25, 2025, through June 24, 2027, unless earlier terminated.

171. Under 8 C.F.R. § 236.23(d)(1), USCIS may exercise discretion to terminate deferred action but ordinarily must provide notice of intent to terminate and an opportunity to respond before doing so, subject to the exceptions specified by regulation.

172. Petitioner does not allege as an established fact that DHS formally terminated her DACA. The present record does not conclusively establish that such termination occurred.

173. Instead, Petitioner alleges that Respondents have not identified any termination decision or demonstrated compliance with the procedural safeguards governing one.

174. If Respondents contend that her DACA was terminated before or in connection with the June 8 detention, they should identify the decision, its effective date, the legal basis for termination, the notice afforded, and any exception invoked.

175. The Government cannot simply equate detention with formal termination, because those actions possess distinct legal consequences.

176. To the extent discovery or the Government's return establishes termination without required procedures, Petitioner seeks appropriate relief under the applicable regulation and governing principles requiring agencies to follow their own binding procedural rules. See *United States ex rel. Accardi v. Shaughness*y, 347 U.S. 260, 267 (1954); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959).

177. This claim is pleaded in the alternative and depends upon production or confirmation of the actual DHS termination record. Petitioner does not seek a finding of regulatory violation based solely upon the fact of detention.

**COUNT FOUR**

**CONTINUING DETENTION BASED UPON A LEGALLY OR CONSTITUTIONALLY DEFICIENT FLIGHT-RISK DETERMINATION, TO THE EXTENT ESTABLISHED BY THE POST-JUDGMENT BOND RECORD**

178. Petitioner re-alleges and incorporates the preceding paragraphs.

179. Following the September 25 federal judgment, an Immigration Judge conducted a § 1226(a) custody hearing and denied release based upon flight risk.

180. Under *Martinez v. Clark*, 124 F.4th 775, 781–85 (9th Cir. 2024), federal courts may review legal and constitutional errors in immigration custody proceedings but may not simply substitute their own discretionary weighing of bond evidence.

181. Petitioner therefore does not assert that a finding of flight risk is unconstitutional solely because she possesses favorable community ties or because a different adjudicator might have granted bond.

182. Instead, the Court should examine whether the Immigration Judge applied the correct legal standard, treated pending criminal allegations

according to their actual procedural status, considered legally material evidence, and supplied a reasoned explanation sufficient to distinguish individualized risk from generalized assumptions.

183. Particularly relevant are Petitioner's active or recently active DACA grant, her history of compliance with federal immigration procedures, her education and residence, the dispositions of the criminal matters, and any proposed conditions of supervision.

184. The present pleading does not attribute specific findings, statements, or evidentiary omissions to the Immigration Judge without the actual September hearing record.

185. Petitioner requests production of the written order, any explanatory memorandum, the Digital Audio Recording, hearing exhibits, and administrative appeal records.

186. If that record establishes a reviewable legal or constitutional defect, Petitioner seeks relief under *Martinez* in addition to the independently pleaded pre-deprivation claim.

187. Petitioner recognizes that this separate challenge to the IJ's custody ruling may implicate prudential exhaustion under Leonardo. Its procedural treatment should therefore be distinguished from the antecedent claim, and

the Court should consider excusal or a stay according to the relevant administrative record.

## COUNT FIVE

## CONTINUED CIVIL DETENTION WITHOUT A CONSTITUTIONALLY SUFFICIENT BASIS VIOLATES THE FIFTH AMENDMENT AS APPLIED

188. Petitioner re-alleges and incorporates the preceding paragraphs.

189. Immigration detention is civil and regulatory rather than punitive. *Zadvydas*, 533 U.S. at 690; *United States v. Salerno,* 481 U.S. 739, 747 (1987).

190. Such detention must remain reasonably related to legitimate non-punitive objectives and administered through constitutionally adequate procedures.

191. Petitioner has been detained since June 8, 2026, while her immigration proceedings and related custody challenges continue.

192. She does not contend that the duration of custody, standing alone, automatically establishes a constitutional violation or creates an unconditional right to release.

193. The as-applied injury arises from the combination of a previously established DACA-related liberty interest, detention without the allegedly

required advance procedures, and continued confinement following a later bond hearing that did not necessarily cure that original injury.

194. The Government has legitimate authority to address substantiated public-safety concerns and ensure appearance. Its exercise of that authority must nevertheless comply with the Fifth Amendment.

195. Petitioner submits that physical confinement cannot be maintained indefinitely through a process that fails to remedy an established antecedent deprivation of protected liberty.

196. She therefore requests relief tailored to the particular procedural and constitutional violations proved by the record.

## REQUEST FOR EMERGENCY ADJUDICATION PURSUANT TO 28 U.S.C. § 2243

### A. *The Governing Habeas Statute Reflects Congress's Commitment To Prompt Review Of Allegedly Unlawful Custody*

197. Petitioner respectfully requests emergency adjudication pursuant to 28 U.S.C. § 2243 because her continued confinement presents a substantial constitutional question concerning the deprivation of liberty previously authorized through DACA and the adequacy of the subsequent custody proceedings.

198. Section 2243 directs a federal court entertaining a habeas application to issue the writ or an order directing the respondent to show cause unless the application itself establishes that the petitioner is not entitled to relief.

199. The statute establishes accelerated procedures for obtaining a return and considering the petition, subject to extensions and other procedural adjustments authorized by applicable law.

200. These provisions recognize the fundamental distinction between ordinary civil litigation and a proceeding challenging ongoing physical imprisonment.

201. The Supreme Court has emphasized that habeas corpus must provide an effective opportunity to challenge unlawful confinement and permit meaningful relief where a violation is established. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

202. Petitioner recognizes the Court's authority to manage its docket and afford Respondents a fair opportunity to answer. She does not contend that § 2243 eliminates ordinary procedural safeguards or guarantees a favorable ruling.

203. 2Nevertheless, the statute strongly favors prompt examination where every additional day of incarceration extends the liberty deprivation alleged to be unconstitutional.

B. *The Prior Grant Of Habeas Relief And Subsequent Denial Of Bond Distinguish This Action From An Ordinary Initial Custody Challenge*

204. This case presents an unusual posture. Petitioner has already obtained a federal judgment granting habeas relief, but Respondents elected the alternative remedy of an individualized custody hearing, after which the Immigration Judge denied release.

205. The present litigation does not arise from an attempt to bypass the first judgment. It concerns whether that hearing adequately remedied an antecedent constitutional injury not expressly resolved in the prior proceedings.

206. The October 8 decision in *De La Rosa Gallegos* provides a closely analogous legal analysis from the same District concerning DACA-derived liberty, the timing of required procedural protections, and the availability of immediate release.

207. The Court can examine the legal significance of that authority promptly without requiring extensive discovery unrelated to the detention claims.

208. The central documentary materials are identifiable: Petitioner's DACA approval and termination history; the June 8 arrest and custody records; the September 25 federal judgment; and the subsequent custody-hearing record.

209. The Government possesses the administrative records needed to establish whether DACA was terminated, whether advance process was afforded, and what circumstances were considered when detention began.

210. Narrowly focused production of those materials would permit prompt evaluation of the constitutional claims.

C. *Petitioner Requests An Expedited Return, Preservation Of Evidence, And An Effective Remedy*

211. Petitioner requests an expedited order to show cause directing Respondents to identify the current statutory basis for her detention, the status of her DACA grant, the procedures provided before June 8, 2026, and the legal and factual grounds supporting continued custody.

212. She further requests production of the subsequent IJ bond order, any explanatory memorandum, the hearing recording, and the evidence upon which the flight-risk determination rested.

213. Because the September 25 judgment involved the same individual and detention, Petitioner requests that the Court consider the record of the prior action and any applicable related-case procedures.

214. Petitioner also requests preservation of the relevant DHS and EOIR records, including all DACA termination notices, custody determinations, arrest reports, administrative hearing recordings, and electronically maintained documents concerning her detention.

215. If the Court determines that continued detention violates the Constitution, Petitioner requests immediate release under reasonable conditions rather than further delay through administrative proceedings incapable of fully remedying the established injury.

216. Alternatively, she requests a constitutionally adequate hearing within a period fixed by the Court, together with appropriate confirmation that the Court's directives have been implemented.

**IMMEDIATE RELEASE IS THE APPROPRIATE PRIMARY REMEDY**

217. Petitioner seeks release to remedy unlawful custody, not dismissal of the immigration charges or a prohibition against pursuing removal.

218. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984), establishes that an unlawful arrest does not itself invalidate a subsequent deportation proceeding. Petitioner does not seek that result. The present question is whether Respondents can establish a lawful basis for his continuing physical confinement and what remedy is appropriate for the statutory and constitutional violations proved here.

219. Petitioner therefore does not ask the Court to assume that every arrest defect permanently bars later custody. He requests examination of the entire custody record, including any intervening process or independent legal basis Respondents contend supports continued detention.

220. Where the record establishes the violations alleged here and no sufficient intervening basis for custody, release restores the liberty unlawfully taken. A promise to consider bond at an unspecified future time would leave the challenged deprivation in place.

221. The remedies ordered in *Valtierra Moreno*, *Castellanos Franco*, and *Sargento-Ramirez* support immediate release where the particular statutory and procedural defects warrant it. The Court should apply their reasoning to the facts established in this case rather than presume a bond hearing is the exclusive available remedy.

222. If the Court determines that a prompt custody hearing is sufficient, Petitioner requests a hearing within seven days before a neutral adjudicator, with counsel, access to the evidence relied upon, an opportunity to present and contest evidence, a contemporaneous record, and a reasoned decision identifying the legal and factual grounds.

223. Petitioner requests a clear-and-convincing burden on the Government as an appropriate constitutional remedy for the violations found, not as an assertion that § 1226(a) invariably imposes that burden in every initial bond proceeding. If the Court declines that request, it should prescribe the burden and safeguards required under the governing law.

224. Any relief addressing future detention should be limited to Petitioner and the injury adjudicated. Petitioner requests notice and a meaningful hearing before renewed § 1226(a) detention on the same factual basis, subject to genuinely exigent circumstances and materially different lawful grounds.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner DEIRY BERENICE RUIZ SANDOVAL respectfully prays that this Court:

A. Assume jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2241 and issue an expedited Order to Show Cause requiring Respondents to justify Petitioner's continued physical confinement;

B. Determine that Petitioner's detention remains subject to the statutory custody framework established by 8 U.S.C. § 1226(a), consistent with the prior judgment in *Ruiz Sandoval v. Mullin*, No. 5:26-cv-03859-AYP, unless Respondents establish a legally applicable and independently supported alternative detention authority;

C. Declare that Petitioner's affirmative DACA grant, considered together with her established education, employment, family relationships, and community liberty, gives rise to a constitutionally protected liberty interest warranting procedural safeguards under the Fifth Amendment;

D. Determine whether Respondents deprived Petitioner of that protected liberty interest on June 8, 2026, without constitutionally sufficient advance notice and an opportunity to contest detention, and without circumstances justifying departure from otherwise required pre-deprivation procedures;

E. Require Respondents to identify whether Petitioner's DACA grant, scheduled to remain effective through June 24, 2027, was ever formally terminated; and, if so, produce the termination decision, notice, stated grounds, administrative record, and documents demonstrating compliance with 8 C.F.R. § 236.23(d);

F. Determine that the later provision of an ordinary § 1226(a) custody hearing did not adequately remedy any independently established antecedent constitutional deprivation, notwithstanding Respondents' compliance with the alternative hearing remedy authorized by the September 25, 2026 judgment;

G. Issue a Writ of Habeas Corpus ordering Respondents to IMMEDIATELY RELEASE PETITIONER from physical immigration custody under reasonable noncustodial conditions sufficient to ensure appearance and address demonstrated public-safety concerns;

G. Enjoin Respondents, following release pursuant to this Court's judgment, from re-detaining Petitioner under the same factual circumstances without constitutionally adequate advance notice and an opportunity to be heard before a neutral decision-maker, except where genuine exigent circumstances justify immediate action followed by constitutionally sufficient prompt review;

H. Require, as a case-specific prospective remedy where supported by the Court's findings, that Respondents establish by clear and convincing evidence before a neutral decision-maker that re-detention is necessary because Petitioner presents a danger or flight risk that cannot reasonably be mitigated through less restrictive conditions, consistent with the persuasive remedy entered in *De La Rosa Gallegos*;

I. Direct that any release conditions be individualized and no more restrictive than reasonably necessary to protect the Government's demonstrated interests, with electronic monitoring imposed only upon an adequate individualized justification if the Court finds that safeguard appropriate;

J. Alternatively, if the Court determines that another custody hearing will adequately remedy the constitutional violations found, direct Respondents to provide that hearing within seven days, or another brief

period fixed by the Court, with meaningful advance notice, participation of counsel, consideration of all material evidence, the legally appropriate burden of proof, evaluation of reasonable alternatives to detention, and reasoned findings;

K. Require any renewed custody hearing to distinguish actual criminal convictions from arrests, charges, and diversion dispositions; address the legal and factual significance of Petitioner's DACA grant; and consider her appearance history, education, community ties, verified release plan, and evidence concerning flight risk and danger;

L. Excuse prudential exhaustion of administrative remedies concerning the independent pre-deprivation constitutional claim, while retaining discretion to stay any separately pleaded IJ bond-error claim requiring completion of administrative review;

M. Require Respondents to produce and preserve the relevant arrest, detention, DACA, and bond-hearing records and to provide a prompt compliance report confirming implementation of any relief ordered;

N. Declare that Respondents' continued detention of Petitioner violates the Due Process Clause of the Fifth Amendment to the extent established by the Court's findings, together with any applicable statutory or regulatory violations demonstrated by the record;

O. Award such reasonable costs and attorney's fees as may be authorized by applicable law, including 28 U.S.C. § 2412 where its requirements are satisfied; and

P. Grant such other and further relief as the Court deems just and proper.

Dated this 13th day of October, 2026.

Carlos Barrios

Carlos R. Barrios
Attorney for Petitioner

## VERIFICATION BY PETITIONER PURSUANT TO 28 U.S.C. § 2242

I, Carlos Barrios, am submitting this verification on behalf of DEIRY BERENICE RUIZ SANDOVAL, who is currently detained by the U.S. Department of Homeland Security at the ADELANTO ICE PROCESSING CENTER in Adelanto, California. Petitioner is being held under conditions that severely restrict or prevent meaningful communication with the outside world.

As a result, he is unable to review or sign this petition personally or to prepare and file it on his own behalf.

I have communicated with Petitioner to the extent possible and have obtained the factual information contained in this Petition from my direct knowledge, records, and reliable sources. I hereby verify that, to the best of my knowledge and belief, the factual statements contained in the attached Petition for Writ of Habeas Corpus are true and correct, and that I could testify to those facts if called upon to do so.

Date: 10/14/2026

Carlos Barrios

Carlos Barrios